UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
AMERICAN FRIENDS OF YESHIVAT OHR
YERUSHALAYIM, INC.,

                          **Appellant,**                    **MEMORANDUM**
                                                      **AND ORDER**

                -against-                                **04-CV-1798 (CPS)**


UNITED STATES OF AMERICA,

                           **Appellee.**
-------------------------------------------------------------x

**ROANNE L. MANN, UNITED STATES MAGISTRATE JUDGE:**

       Appellant American Friends of Yeshivat Ohr Yerushalayim, Inc. ("American Friends")

commenced this action on May 6, 2004, seeking review of a determination by the Internal

Revenue Service ("IRS") that American Friends was not entitled to an abatement of tax

penalties assessed against it for the tax years ending on June 30, 2000, June 30, 2001, and June

30, 2002.  On March 30, 2009, appellee United States of America ("the government") moved

for judgment on the pleadings and, on May 1, 2009, American Friends filed its memorandum

in opposition, accompanied by an affidavit from American Friends' counsel, with several

exhibits attached.  See Affidavit of Howard K. Fishman (May 1, 2009) ("5/1/09 Fishman

Aff."), ECF Docket Entry ("D.E.") # 39.

       According to the government, American Friends attached exhibits to its opposition

papers that, despite a request from the government and a compulsion order from this Court,

were not produced by American Friends during the discovery period, which closed on

December 12, 2008.  See Letter from Lisa L. Bellamy, Counsel for the Government, to the

Court (May 1, 2009) ("5/1/09 Gov't Letter"), D.E. # 40, at 1-2.  Specifically, the government contends that, in violation of American Friends' obligations under the Federal Rules of Civil Procedure and this Court's discovery orders, American Friends failed to produce during discovery a printout of its general ledger for the tax year ending on June 30, 2000 (which is attached as Exhibit P to American Friends' submission opposing judgment on the pleadings), or copies of tuition checks mailed from Yeshiva University to American Friends, ranging in date from September 12, 2001 to April 24, 2002 (which are attached to the same document as Exhibit Q).  See 5/1/09 Fishman Aff. ¶¶ 17-18 & Exs. P-Q.

Accordingly, by letter dated May 1, 2009, the government requested, as a discovery sanction, an order striking American Friends' opposition papers in their entirety or, in the alternative, striking the offending exhibits, i.e., the general ledger and tuition checks.  See 5/1/09 Gov't Letter, at 1.  On May 5, 2009, American Friends sought leave to cross-move for an order striking an exhibit from the government's motion for judgment on the pleadings and/or precluding the government from offering certain evidence in connection with that motion; American Friends alleged that the government had also failed to timely disclose documents in its possession.  See Letter from Howard K. Fishman, Counsel for American Friends, to the Court (May 5, 2009), D.E. # 42, at 1.   After leave was granted, American Friends filed its cross-motion on May 14, 2009.  See Appellant Mot. for Sanctions (May 14, 2009), D.E. # 48.  The Honorable Charles P. Sifton referred both motions to the undersigned magistrate judge for decision or a Report and Recommendation on whether the relief sought

should be granted.[1]  See Order (May 12, 2009), D.E. # 46; Order (May 5, 2009), D.E. # 41.

For the reasons that follow, this Court concludes that precluding American Friends from relying on the general ledger and tuition checks is an appropriate sanction in this case, and denies the government's request to preclude American Friends from responding at all to the government's dispositive motion.  American Friends' motion for sanctions is denied.

## BACKGROUND

American Friends filed this action on May 6, 2004, seeking review of an IRS determination, following a collection due process proceeding, that American Friends was not entitled to an abatement of tax penalties assessed against it for failing to timely file its informational returns (Form 990s) for the tax years ending on June 30, 2000, June 30, 2001, and June 30, 2002.  Among other arguments, American Friends contends that tuition checks it

---

[1]  Judge Sifton referred these motions to this Court "for decision or report, if dispositive." See, e.g., Order (May 5, 2009), D.E. # 41.  Whether preclusion of evidence as a discovery sanction is dispositive depends upon the nature of the evidence precluded.  See Pure Power Boot Camp v. Warrior Fitness Boot Camp, 587 F.Supp.2d 548, 551 (S.D.N.Y. 2008) (noting that "preclusion of evidence as a discovery sanction might normally be a non-dispositive matter for the [magistrate judge] to decide as part of its general pretrial supervision of a case[,]" but issuing a Report and Recommendation, at the district court's request, because of the potentially dispositive nature of the proposed sanctions); Steinman v. Spinal Concepts, Inc., No. 05-CV-774S, 2007 WL 4198186, at *6 (W.D.N.Y. Nov. 7, 2007) ("Preclusion of evidence . . . as a discovery sanction is severe, and, depending upon the evidence precluded . . . , possibly dispositive[.]") (citation omitted).

Here, American Friends has offered testimony and other evidence in connection with the arguments it believes are supported by the general ledger and tuition checks.  See 5/1/09 Fishman Aff. ¶¶ 2-16, 19 & Exs. A-O, R.  Accordingly, because preclusion of Exhibits P and Q is not dispositive, and because this Court concludes that precluding American Friends from responding at all to the government's motion for judgment on the pleadings is too severe a sanction, see infra p. 28, this Court is issuing a Memorandum and Order, as opposed to a Report and Recommendation.

-3-

collected on behalf of Yeshivat Ohr Yerushalayim ("YOY"), a religious school located in Israel, were mistakenly included as income in its gross receipts for the tax years at issue, resulting in tax penalties five times greater than those that would have been applicable absent that error.

On August 9, 2004, this Court held an initial conference and set a discovery schedule to govern this case.  See Minute Entry (Aug. 10, 2004), D.E. # 5.  Shortly thereafter, the government served American Friends with its First Set of Interrogatories and Requests for Production.[2]

American Friends took nearly four months to respond to the government's discovery demands; during that time, the government consented to no less than three extensions of American Friends' time to respond.  See generally Letter from Bonni J. Perlin, Counsel for the Government, to the Court (Jan. 3, 2005) ("1/3/05 Gov't Letter"), D.E. # 8.  When American Friends finally did respond, it indicated that it had produced all responsive documents that had not been lost or destroyed.  See American Friends' Responses to the Government's First Set of Requests for Production (Dec. 29, 2004); American Friends' Responses to the Government's First Set of Interrogatories (Dec. 29, 2004), Response No. 2.

Apparently, the only effort undertaken by American Friends' counsel, Howard K. Fishman, to obtain documents during that four-month time period was to contact Saul Strauss, American Friends' accountant since the mid-1990s, and request that he provide copies of any

---

[2]  In response to a court order, the parties provided copies of all discovery requests and responses to the Court at a show-cause hearing held on May 29, 2009.  The Court has caused to be filed via ECF copies of the requests and responses (or portions thereof) that are material to this opinion.  See Excerpts from Discovery Requests and Responses, D.E. # 54.

financial records in his possession pertaining to American Friends. See Affidavit of Howard K. Fishman (May 8, 2009) ("5/8/09 Fishman Aff."), D.E. # 44, ¶¶ 11-15. According to Fishman, Strauss produced copies of American Friends' informational returns, and represented that he had "no other documents." Id. ¶ 12. As is apparent from the record that has since developed, however, Fishman never bothered to inquire as to whether Strauss searched for electronic documents, never bothered to visit Strauss' office, and never bothered to follow up with persons identified by Strauss as potential sources of documents. See infra pp. 14-19.

On January 4, 2005, due to American Friends' delay, this Court granted the government's request for an additional three months to complete discovery. See 1/3/05 Gov't Letter, at 1-2; Order (Jan. 4, 2005), D.E. # 10. The Court warned the parties that further delays would not be tolerated, and ordered American Friends to supplement its responses to the government's discovery demands. See id.

Meanwhile, Strauss had prepared amended informational returns for the relevant tax years, in which he had excluded from income the tuition payments claimed to have been received by American Friends on behalf of YOY. See 5/8/09 Fishman Aff. ¶ 16. In early 2005, Fishman filed the amended returns with the IRS, see id., and this case was administratively closed to enable the IRS to audit the returns, see Order (March 31, 2005), D.E. # 14, which it did in December 2006. See 5/8/09 Fishman Aff. ¶ 16. On January 10, 2008, the IRS rejected the amended returns as inaccurate. See id., Ex. A. Thereafter, this case was reopened for further proceedings.

On June 20, 2008, this Court entered an order scheduling further discovery and setting a fact discovery deadline of December 12, 2008. See Scheduling Order (June 20, 2008), D.E.

# 22. The government promptly served its Second Set of Requests for Production on American Friends; this time, the government specified the types of documents sought, demanding all "invoices, receipts, copies of cancelled checks, cash receipt journals, written documentation of donations, or correspondence, relating to donations or tuition payments received by [American Friends]" for the relevant tax years. <u>See</u> Government's Second Set of Requests for Production, at 3.

American Friends did not seek any further discovery. <u>See</u> Transcript of Hearing Held on May 19, 2009 ("5/19/09 Tr."), D.E. # 52, at 3. Nor did it timely respond to the government's discovery demands. Accordingly, on November 14, 2008, after nearly four months with no response from American Friends – and no response from Fishman to the government's three attempts to reach him – the government filed a motion to compel. <u>See</u> Letter from Lisa L. Bellamy, Counsel for the Government, to the Court (Nov. 14, 2008), D.E. # 23. This prompted a court order directing American Friends to "either respond to the gov[ernmen]t's discovery demands or show cause, via ECF, why the Court should not enter a compulsion order and impose sanctions." Endorsed Order (Nov. 17, 2008), D.E. # 24. Finally, on November 19, 2008, in lieu of the latter option, American Friends provided the government with four documents, all of which predated the filing of this action.

The parties appeared before the Court for a settlement conference on December 18, 2008. Fishman repeatedly represented, as he has throughout the course of this litigation, that American Friends' financial records predating 2002 had been lost or destroyed, <u>See</u> Tr. of Hearing Held on December 18, 2008 ("12/18/08 Tr."), D.E. # 53, at 6, 7, 8, 10-11. In fact, that loss or destruction has been cited by American Friends as the reason for the lengthy delay

in filing its informational returns for 2000, 2001 and 2002, <u>see</u> <u>id</u>. at 10-11, as well as its inability to produce documents in connection with this litigation. <u>See</u> American Friends' Responses to the Government's First Set of Interrogatories, Response No. 2. Fishman blames this problem on Isabel Kogan, American Friends' managing agent/bookkeeper during the relevant tax years. <u>See</u> <u>id</u>. at 6-10. Strauss blames Fishman. <u>See</u> *infra* p.14 n.5. And American Friends' president, Rabbi Samuel Wagner, reportedly testified at deposition that "only God knows the truth[.]" 12/18/08 Tr. at 15.

After this Court's settlement proposal was rejected, a briefing schedule for dispositive motions was set and, on March 30, 2009, the government moved for judgment on the pleadings. It was not until after the government had filed its dispositive motion that the general ledger and tuition checks suddenly surfaced. In drafting American Friends' papers opposing the government's motion, Fishman decided to attach as exhibits copies of the amended informational returns submitted to the IRS in 2005, but he purportedly could not locate them. <u>See</u> 5/8/09 Fishman Aff. ¶ 19. Apparently, despite the pendency of this litigation, Fishman either did not retain copies of those returns (which *he* had submitted to the IRS), or else he lost them. Accordingly, on April 27, 2009, just a few days before American Friends' response was due, Fishman allegedly called Strauss – whom he had not spoken with since late 2006, <u>see</u> 5/19/09 Tr. at 26 – to ask Strauss whether he had retained copies of the amended informational returns. <u>See</u> 5/18/08 Fishman Aff. ¶ 20.

Two days later, Strauss informed Fishman that he had located copies of the amended informational returns. <u>See</u> <u>id</u>. ¶ 20. Around 1:00 p.m. the following day (the deadline for American Friends' opposition papers), Fishman visited Strauss' office to obtain the copies.

See id. According to Fishman's account of the visit, upon Fishman's arrival, Strauss began searching a Redweld for the documents, and Fishman joined in the pursuit. Fishman "quickly saw that the [R]edweld contained copies of bank statements and a printout of a general ledger." See id. Although Fishman now claims that Strauss informed him that the documents had been reviewed by the IRS in connection with the December 2006 audit, Strauss "was unable to so attest" in his affirmation filed in connection with the instant motions. See id. ¶¶ 20, 30. Fishman took the Redweld with him. See id. ¶ 21.

Fishman claims that later that day (April 30, 2009), he reviewed the entire contents of the Redweld, which contained a host of documents, including the general ledger and tuition checks. See id. ¶¶ 22-23. He made no attempt to inform the government of this new development. See 5/19/09 Tr. at 9. Instead, in the early morning hours of May 1, 2009, Fishman belatedly filed American Friends' papers in opposition to the government's motion for judgment on the pleadings, and attached the recently retrieved evidence. The government thereupon asked Judge Sifton for (1) an adjournment of oral argument on its dispositive motion; and (2) leave to file a motion for discovery sanctions. See 5/1/09 Gov't Letter. On May 5, 2009, Judge Sifton issued an order adjourning oral argument and referring the government's motion for discovery sanctions to the undersigned magistrate judge. See Order (May 5, 2009), D.E. # 41. Later that day, this Court issued an order directing American Friends to show cause why the relief sought by the government should not be granted, see Order to Show Cause (May 5, 2009), D.E. # 43; American Friends moved for leave to file a cross-motion for sanctions; and Judge Sifton referred the cross-motion to the undersigned. This Court heard oral argument on the parties' respective motions for sanctions on May 19,

2009.

<h3 style="text-align:center">DISCUSSION</h3>

The Court notes, at the outset, that the government's motion for judgment on the pleadings, which is currently pending before Judge Sifton, poses a separate substantive dispute concerning whether the Court should consider certain documents (including those at issue here) or whether its inquiry should be limited to evidence that was before the IRS at the time of the collection due process proceeding. To be clear, this Memorandum and Order is limited to the issue of whether discovery sanctions should be imposed on the parties, and does not address the scope of judicial review or the admissibility of those documents under the Federal Rules of Evidence.[3] With that caveat, the Court turns to the instant motions for sanctions.

## I. Applicability of Rule 26 of the Federal Rules of Civil Procedure

Pursuant to Rule 26(a) of the Federal Rules of Civil Procedure, "a party must, without awaiting a discovery request, provide to the other parties a copy – or a description by category and location – of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses[.]" Fed. R. Civ. P. 26(a)(1)(A)(ii). Under Rule 26(e), a party must supplement its Rule 26(a) initial disclosures, as well as its responses to discovery requests, when ordered to do so by a court and/or where a "party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not

---

[3] Accordingly, even if a preclusion sanction were not warranted, the dispute before Judge Sifton could nevertheless provide a separate and independent basis for excluding the documents at issue here.

otherwise been made known to the other parties during the discovery process[.]" See Fed. R. Civ. P. 26(e)(1)(A)-(B).[4]

The duty to supplement "applies whether the corrective information is learned by the client or by the attorney[,]" 1993 Advisory Committee Note to Fed. R. Civ. P. 26(e), and extends not only to newly discovered evidence, but to "information that was not originally provided although it was available at the time of the initial disclosure or response." 2007 Advisory Committee Note to Fed. R. Civ. P. 26(e). The duty to supplement is triggered only where "a party[,] or more frequently [its] lawyer, obtains actual knowledge that a prior response is incorrect." Zubulake v. UBS Warburg LLC, 229 F.R.D. 422, 433 (S.D.N.Y. 2004) (internal quotation marks and citation omitted; first alteration in original).

"The *continuing* duty to supplement disclosures strongly suggests that parties also have a duty to make sure that discoverable information is not lost." Id. (alteration in original). Failure to supplement Rule 26(a) disclosures and/or discovery responses may result in the imposition of sanctions. See Fed. R. Civ. P. 37(c)(1).

Rule 26(a) initial disclosures are ordinarily not required in an action (such as this one) "for review on an administrative record[.]" Fed. R. Civ. P. 26(a)(1)(B)(i). Here, however, the Court held an initial conference during which Rule 26(a) disclosures were expressly ordered, see Minute Entry & Order (Aug. 10, 2004), D.E. # 5, and neither party objected that

---

[4]  Rule 26(e) was amended in 2007, after the commencement of this litigation. The amended Rule 26(e) was, however, in effect when this case was reopened in June 2008, and the parties were therefore bound to comply with it. In any event, the 2007 amendments were not substantive. See, e.g., 2007 Advisory Committee Note to Fed. R. Civ. P. 26(e) (noting that changes were "intended to be stylistic only.").

the case was exempt from the initial disclosure requirement.  <u>See</u> Fed. R. Civ. P. 26(a)(1)(C)

("A party must make the initial disclosures at or within 14 days after the parties' Rule 26(f)

conference . . . unless a party objects during the conference that initial disclosures are not

appropriate in this action and states the objection in the proposed discovery plan.").  And when

discovery was reopened in 2008, "[t]he parties d[id] not request any changes to the timing,

form, or requirements for disclosures under Rule 26(a) . . . ."  Report of Rule 26(f) Planning

Meeting (June 20, 2008), D.E. # 21, at 1.

In any event, the parties have waived any argument concerning the applicability of Rule

26(a) by moving for sanctions on the basis of one another's failure to provide information

required by that rule.  Accordingly, the Court, like the parties, will assume that the

requirements of Rule 26(a) apply.

## II.  Government's Motion for Sanctions

In its initial application for sanctions, the government did not identify the specific rule

underlying its request for preclusion.  <u>See</u> <u>generally</u> 5/1/09 Gov't Letter.  The government

honed its argument in its reply memorandum, contending that preclusion is warranted under

Rule 37(c) of the Federal Rules of Civil Procedure, based on American Friends' failure to

supplement its initial disclosures and discovery responses.  <u>See</u> <u>generally</u> Gov't's Reply to

Appellant's Resp. to Order to Show Cause (May 18, 2009), D.E. # 50.

Having reviewed the parties' submissions, this Court agrees with the government that

sanctions are appropriate under Rule 37(c).  Moreover, because American Friends has willfully

failed to comply with discovery orders, sanctions are likewise warranted under Rule 37(b)(2).

**A. Sanctions for Failure to Supplement Initial Disclosures and Discovery Responses**

Rule 37(c) of the Federal Rules of Civil Procedure provides that where "a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). "The purpose of [Rule 37(c)] is to prevent the practice of 'sandbagging' an adversary with new evidence." Ventra v. United States, 121 F.Supp.2d 326, 332 (S.D.N.Y. 2000) (citing Johnson Elec. N.A. v. Mabuchi Motor Am. Corp., 77 F.Supp.2d 446, 458 (S.D.N.Y. 1999)).

"Despite the mandatory nature of Rule 37(c)(1), the Second Circuit has held that preclusion is a discretionary remedy, even if 'the trial court finds that there is no substantial justification and the failure to disclosure is not harmless.'" Pal v. New York Univ., No. 06-Civ.-5892 (PAC) (FM), 2008 WL 2627614, at *3 (S.D.N.Y. June 30, 2008) (quoting Design Strategy, Inc. v. Davis, 469 F.3d 284, 297 (2d Cir. 2006)). "To determine whether evidence should be precluded, a court should consider: (1) the explanation for the failure to disclose, (2) the importance of the evidence to be precluded, (3) prejudice if the evidence were not precluded, and (4) the possibility of a continuance." DeSantis v. Deutsche Bank Trust Co. Ams., Inc., No. 05-Civ.-10868 (DC), 2009 WL 66351, at *4 (S.D.N.Y. Jan. 9, 2009) (citing Patterson v. Balsamico, 440 F.3d 104, 107 (2d Cir. 2006)). Although the imposition of sanctions pursuant to Rule 37(c) does not require a showing of bad faith, see Design Strategy, 469 F.3d at 296, a party's bad faith may "be taken into account as part of the party's explanation for its failure to comply." Id.

As demonstrated by the discussion that follows, American Friends has not shown that

its failure to disclose and produce the general ledger and tuition checks before the close of discovery was substantially justified. Fishman has admitted that after the December 2006 audit, and throughout the entire second phase of discovery, he made absolutely no efforts to obtain documentation from Strauss. See 5/19/09 Tr. at 26. See also Pal, 2008 WL 2627614, at *3 (finding no substantial justification where defendant served supplemental disclosures after business hours on the last day of a previously extended discovery deadline, and failed to show that any effort had been made to obtain the information earlier in the litigation). Moreover, at no point in the litigation did Fishman ever even ask Strauss to search electronic files. See 5/19/09 Tr. at 37; cf. Zubulake, 229 F.R.D. at 434 (noting that, to comply with the continuing duty to supplement, "counsel should instruct all employees to produce electronic copies of their relevant active files.").

Nor has American Friends satisfied the second prong of Rule 37(c)(1), inasmuch as its failure to supplement was not harmless: If American Friends were permitted to rely on the previously undisclosed general ledger and tuition checks, the Court would then be constrained to reopen discovery, which would likely include discovery concerning the source and authenticity of those documents, as well as additional depositions and perhaps another deposition of Strauss. See Pal, 2008 WL 2627614, at *4 (delay in disclosure was not harmless, where discovery would have to be reopened, resulting in additional litigation expenses).

Accordingly, because American Friends' violation of Rule 26(a) and (e) was neither substantially justified nor harmless, the Court next considers the factors relevant to its determination whether the sanctions sought by the government are appropriate.

## 1. Explanation for Failure to Disclose

American Friends attempts to justify its failure to disclose the general ledger and tuition checks by blaming Strauss, its accountant, for not conducting a thorough search for those documents. In addition, with respect to the tuition checks, American Friends contends that Kogan, its former bookkeeper, refused to cooperate when asked to produce documents in her possession.

The general ledger's long and winding road to disclosure is quite the saga. The ledger was purportedly created by Fishman's ex-wife, <u>see</u> 5/19/09 Tr. at 27-29; <u>see also</u> <u>id</u>. at 28 ("There was something like this generated in my house."), who was still married to Fishman during the relevant tax years. Fishman maintains that his ex-wife was American Friends' bookkeeper at the time the general ledger was created,[5] and that he acted merely as a courier, periodically delivering American Friends' financial records from his ex-wife to the organization's accountant, Strauss. <u>See</u> <u>id</u>. at 29. According to Fishman, the only time the general ledger was retrieved from his ex-wife's computer was when it was downloaded onto a disk and delivered (by Fishman) to Strauss. <u>See</u> <u>id</u>. at 30, 32. Fishman asserts that in 2001 or

---

[5] Strauss, by contrast, has alleged that Fishman was American Friends' bookkeeper during the relevant tax years. Documents provided by the government as part of its 2004 initial disclosures support that view. <u>See</u> Undated Facsimile from Strauss to Fishman ("You need to get disability insurance. If you don't there will be fines. Howard, I never got your figures for the quarter ended 3/31/00."). In addition, in a letter from Strauss to an IRS Settlement Officer dated March 17, 2004, Strauss represented that "[t]his fax was just one of many which I sent to cajole and pressure [Fishman] into performing the services for which he had been hired." <u>See</u> Letter from Saul Strauss to Elissa Sharp (Mar. 17, 2004), at 1. Later in that letter, Strauss suggested that Fishman was eventually fired as American Friends' bookkeeper and replaced by Kogan. <u>See</u> <u>id</u>. Fishman, of course, disputes this accusation, <u>see</u> 5/19/09 Tr. at 29, 33, and points the finger at Kogan and Strauss. <u>See</u> <i>infra</i> pp. 15-16.

2002, the computer (containing all of American Friends' financial records from the mid-1990s through 2000) was disposed of, apparently without copying or otherwise retaining the files contained thereon. See id. at 31-32. Thereafter, the only copy of the general ledger appears to have remained with Strauss.[6]

Fishman's account of the disappearance and reappearance of the tuition checks is equally troubling. According to Fishman, Kogan was hired in 2000 as American Friends' bookkeeper, replacing Fishman's ex-wife (or, if Strauss is to be believed, replacing Fishman); around the same time, the organization's office was moved from New York to Chicago. See id. at 31, 34-35; 12/18/08 Tr. at 8. Kogan, who lived in Chicago, was brought on board because the advent of the "digital age" had enabled American Friends to move certain functions to Israel, thus permitting it to downsize its operation in the United States. See 5/19/09 Tr. at 34-35. Remarkably, despite American Friends' decision to embrace the digital age, it hired Kogan, who did not use a computer to manage the organization's finances. See id. at 35.

Kogan is now blamed for the delay in producing the checks, which Strauss apparently did not know existed, although they were allegedly sitting in a Redweld in his office. By Fishman's account, Kogan, who was fired from American Friends in 2003 for allegedly stealing from the organization, intentionally obstructed efforts to collect documents in

_____

[6] Curiously, the printout of the general ledger that American Friends attached as Exhibit P to its papers opposing the government's dispositive motion is dated November 7, 2006. Fishman surmises that Strauss printed that copy from his computer shortly before the December 2006 audit. See 5/19/09 Tr. at 28-29. If so, the document has been sitting in a Redweld in Strauss' office ever since.

connection with this case.  See id. at 36.  Fishman describes at great length the futile efforts

undertaken by others, such as American Friends' current managing agent, Sigfried Bessler, to

obtain American Friends' documents from Kogan.[7]  See id. at 38.  Conspicuously absent from

American Friends' submissions, however, are descriptions of any efforts undertaken by

Fishman to contact Kogan so as to obtain American Friends' financial records.  Had she been

as hostile as Fishman would have this Court believe, he nevertheless could have served her

with a subpoena *duces tecum*, an avenue that he apparently never explored.  Regardless, the

tuition checks somehow ended up in the possession of American Friends' accountant and, had

Fishman bothered to follow up with Strauss after this case was reopened in June 2008, he

undoubtedly would have located the checks.

     Despite the finger-pointing among various agents of American Friends, the fact

remains that the knowledge of any of its agents as to the existence of the general ledger and

tuition checks should be imputed to American Friends.  Cf. Metro. Opera Ass'n, Inc. v. Local

100, Hotel Employees & Rest. Employees Int'l Union, 212 F.R.D. 178, 221 (S.D.N.Y. 2003)

("The client is charged with knowledge of what documents it possesses.") (quoting Tarlton v.

Cumberland County Corr. Facility, 192 F.R.D. 165, 170 (D.N.J. 2000)).  During oral

argument, Fishman admitted that the documents at issue were within the custody or control of

_____

[7] An affidavit submitted by Bessler confirms that he tried without success to obtain documents
from Kogan.  See Affidavit of Sigfried Bessler, D.E. # 44-4, ¶ 4.  The most reasonable
inference is that Kogan provided the tuition checks to Strauss, since they were found in a
Redweld in Strauss' office.  Indeed, a memorandum from Kogan to Strauss dated November
27, 2001, suggests that Kogan, while acting as bookkeeper, was cooperative with Strauss and
forthcoming in providing American Friends' financial records.  See Memorandum from Isabel
Kogan to Saul Strauss (Nov. 27, 2001) ("Enclosed are the copies of bank statements.  If
there's any missing let me know.").

American Friends as a matter of law,[8] see 5/19/09 Tr. at 12, and they therefore should have been timely disclosed to the governement.  The duty to supplement is not limited to newly acquired information; it also extends to information that "was not originally provided although it was available at the time of the initial disclosure or [discovery] response."  See 2007 Advisory Committee Note to Fed. R. Civ. P. 26(e).  Accordingly, Rule 26(e) required American Friends to promptly disclose the general ledger and tuition checks as supplemental initial disclosures.

American Friends not only failed to timely supplement its initial disclosures; it also failed to produce those documents in response to the government's discovery requests.  While Fishman vaguely asserts that he made repeated efforts to obtain documents from Strauss throughout the course of this litigation, Fishman admits that he *never* asked Strauss whether he had searched his electronic files, which presumably contained the general ledger – a document that, according to Fishman, was prepared by his ex-wife and delivered *by him* to Strauss. 5/19/09 Tr. at 30, 37.  Nor is there any indication that Fishman instructed American Friends and its agents to put a "litigation hold" in place, either when this litigation commenced in May 2004, or when it was reopened in June 2008.  See Zubulake, 229 F.R.D. at 431-32 (discussing

---

[8]  Later in the proceeding, Fishman attempted to backpedal, claiming that when Strauss learned that Fishman had taken documents from his office, Strauss accused him of theft, see 5/19/09 Tr. at 18, a charge Fishman denies. See 5/8/09 Fishman Aff. ¶ 21 (implying that Fishman had received permission from Strauss to take the Redweld with him).  Even assuming *arguendo* that Strauss made that statement, his subjective view of his possessory interest in American Friends' documents is beside the point; because Strauss was (and indeed continues to be) American Friends' accountant, those documents were within American Friends' control for discovery purposes.  See De Vos v. Lee, No. 07-CV-804 (JBW) (RLM), 2008 WL 2946010, at *1 (E.D.N.Y. July 29, 2008) ("[D]ocuments in the possession of a party's accountant are deemed within that party's control for purposes of Rule 34 discovery.") (collecting cases).

the need for a litigation hold to ensure the preservation of relevant documents, and counsel's

obligation "to oversee compliance with the litigation hold").

Moreover, despite Fishman's initial evasions at oral argument when asked about his

contacts with Strauss during the course of this litigation,[9] Fishman eventually acknowledged

that, between the December 2006 audit and the discovery of the general ledger on April 30,

2009, he had *no* contact whatsoever with Strauss in connection with this case.  See 5/19/09 Tr.

at 26.  Apparently, Fishman's visit to Strauss' office on April 30, 2009 was his first visit in

more than two years.  That an attorney representing a client involved in tax litigation would

essentially ignore the files at the office of the client's accountant is beyond comprehension.[10]

Significantly, the government had served a Second Set of Requests for Production on July 21,

2008, which, among other documents, sought cancelled checks, invoices, and records of

receipts.  This demand was surely broad enough to encompass the general ledger and tuition

checks; nevertheless, despite American Friends' inability to obtain those documents from its

series of bookkeepers, Fishman made absolutely no attempt to ask Strauss – the most obvious

source of such documents – whether he possessed any documents responsive to the

government's request.

Unsurprisingly, Strauss did in fact possess copies of American Friends' financial

---

[9]  For example, when asked about the efforts he made to obtain documents from Strauss after the reopening of the case, Fishman responded by discussing, at length, efforts made during the first phase of discovery.  See 5/19/09 Tr. at 15-17.

[10]  It is likewise beyond comprehension that Fishman would need to visit Strauss to obtain copies of the amended informational returns that *Fishman himself* submitted to the IRS, while he was representing American Friends in litigation concerning the original informational returns.  That, however, was Fishman's stated reason for visiting Strauss in the first place.

records.  Therefore, the general ledger and tuition checks were within American Friends'

control when the government served its Second Set of Requests of Production, see De Vos,

2008 WL 2946010, at *1, and American Friends was obligated to either disclose those

documents to government counsel or register appropriate objections at that time.  American

Friends failed to do either, and counsel's eleventh-hour excavation of documents in the

possession of the client's agent provides no excuse for that failure.  See, e.g., Haas v.

Delaware & Hudson Ry. Co., 282 Fed.App'x 84, 86 (2d Cir. 2008) (affirming striking of

affidavit in opposition to motion for summary judgment from previously undisclosed witness;

counsel's claim that his omission was an "unintentional oversight" "does not explain why

[counsel] waited until after the yearlong discovery phase had ended and after the filing of

[defendant's] motion for summary judgment to seek evidence dating from the time of

[plaintiff's] injury from the union representative."); Dickinson v. Merrill Lynch, Pierce,

Fenner & Smith, Inc., 431 F.Supp.2d 247, 254-55 (D. Conn. 2006) (striking exhibit attached

to an affidavit submitted in connection with defendant's reply memorandum in support of

summary judgment where, as here, the document was requested during discovery but not

produced, and no legitimate excuse for the delayed production was offered).

     In sum, American Friends has failed to offer a credible explanation for its failure to

supplement its initial disclosures and discovery responses.  Fishman's professed but dubious

lack of knowledge that Strauss and/or Kogan possessed the documents does not explain why he

failed to follow up with Strauss after the December 2006 audit, or to personally seek the

documents from Kogan.[11]  Moreover, Fishman's filing of the documents without notice to the

government smacks of bad faith.  In any event, whatever Fishman's state of mind, the fact

remains that American Friends had actual knowledge of the existence of the general ledger and

tuition checks through its agent, Strauss.  See Metro. Opera, 212 F.R.D. at 221.

Accordingly, and for all of the reasons stated above, American Friends' unsatisfactory

explanation for its failure to disclose weighs very heavily in favor of imposing sanctions.

## 2. Importance of the Evidence to be Precluded

The tuition checks and general ledger are clearly important to American Friends' theory

of the case, as they lend support to its argument that tuition payments processed on behalf of

YOY were inadvertently included as income on American Friends' informational returns.[12]  On

---

[11]  Indeed, the facts of this case would support monetary sanctions against Fishman, who
signed American Friends' discovery responses and thereby certified that, among other things,
the responses were consistent with the Federal Rules.  See Fed. R. Civ. P. 26(g)(1)(B)(i).
Rule 26(g) "expressly requires counsel's responses to be made upon reasonable inquiry under
the circumstances."  Metro. Opera, 212 F.R.D. at 222 (citation omitted).  "If a certification
violates [Rule 26(g)] without substantial justification, the court, on motion or on its own, must
impose an appropriate sanction on the signer, the party on whose behalf the signer was acting,
or both."  Fed. R. Civ. P. 26(g)(3).

Here, despite failing to follow up with Strauss after the December 2006 audit and never
having personally sought documents from Kogan, Fishman made "repeated representations that
all responsive documents had been produced . . . without any real reflection or concern for
[his] obligations under the rules governing discovery and, in the absence of an adequate search
for responsive documents, without a reasonable basis."  Metro. Opera. 221 F.R.D. at 221-22
(imposing sanctions on counsel as well as the clients).  Given the disconnect between Fishman
and American Friends' agents, "there is simply no way that any discovery response made by
[Fishman] could have been based on a reasonable inquiry under the circumstances."  Id. at 223
(citing Phinney v. Paulshock, 181 F.R.D. 185, 204 (D.N.H. 1998)).

[12]  If, however, the government is correct that the District Court must limit its review to the
original administrative record, see supra p. 9, then those documents are immaterial.

the other hand, American Friends has submitted several other documents in support of that argument, including testimony, bank records, informational returns, financial records obtained from Yeshiva University, and enrollment lists for YOY.

The tuition checks relate only to the tax year ending on June 30, 2002, which is the tax year corresponding to the smallest tax penalty. The checks are important because they help to link specific tuition payments to specific YOY students. But the copies of the checks belatedly disclosed by American Friends lack the reverse side, see 5/19/09 Tr. at 18, which, critically, would show when and where the checks were negotiated, into what accounts they were deposited, and by whom they were endorsed. Moreover, American Friends cannot establish the origin of the checks. See 5/19/09 Tr. at 24, 39-40.

In contrast to the tuition checks, the general ledger relates to the tax year ending on June 30, 2000, which is the tax year corresponding to the largest penalty. The general ledger is, however, somewhat duplicative of bank records submitted in connection with this case, albeit better organized and more detailed. As with the tuition checks, Fishman has no personal knowledge of the source of the general ledger.

Balancing the importance of these documents against their infirmities, this Court concludes that this factor weighs only slightly against imposing sanctions.

### 3. Prejudice to the Government Absent Preclusion

American Friends argues that the general ledger and tuition checks were produced to the IRS in connection with the December 2006 audit of American Friends' amended

informational returns,[13] and that the government therefore has not been prejudiced by its failure to timely disclose those documents. <u>See</u> Appellant Mot. for Sanctions (May 14, 2009), D.E. # 48, at 3. American Friends has not, however, provided any factual support for that contention.

Fishman asserts, without more, that "Strauss confirmed that the documents in the [R]edweld [i.e., the general ledger and tuition checks] were reviewed by the auditing officer at the time of the audit." 5/8/09 Fishman Aff. ¶ 20. However, Fishman admitted at oral argument that he had no personal knowledge as to what was provided to the IRS in connection with that audit, and he conceded that his argument was based entirely upon supposition. <u>See</u> 5/19/09 Tr. at 22-24. Strauss – the person who would have produced the general ledger and tuition checks to the IRS – would not confirm that he had done so; indeed, he struck a statement to that effect from an earlier draft of an affirmation that Fishman had prepared for Strauss' signature in connection with the instant motions for sanctions. <u>See id</u>. at 22-23. <u>See also</u> 5/8/09 Fishman Aff. ¶ 30 ("Mr. Strauss advised that he provided the auditing officer with copies of certain documents, which he believes to be the general ledger and bank statements. Mr. Strauss, however, was unable to so attest in his accompanying affidavit.").

Moreover, the IRS letter rejecting American Friends' amended information returns belies Fishman's hearsay assertion that Strauss had disclosed the checks and general ledger to

---

[13] American Friends' cross-motion for sanctions, assumes that the IRS possessed those documents and that the government should have disclosed them. <u>See</u> <u>infra</u> pp. 31-33.

the IRS.[14]  That letter states that American Friends was "not able to produce records to identify the individuals who made th[e tuition] payments, the students benefit[t]ed by the[] payments, or to produce any records to determine whether in fact the[] amounts represented tuition payments."  5/8/09 Fishman Aff., Ex. A.  The most reasonable inference to be drawn from this contemporaneous statement is that American Friends did not produce the general ledger and/or tuition checks, or any similar documents, in connection with the December 2006 audit.

As previously noted, American Friends' belated production of the documents, after the close of discovery and following the filing of the government's motion for judgment on the pleadings, prejudiced the government.  See supra p. 13.  The government rightly complains that it had no opportunity to examine the general ledger and tuition checks, or to conduct follow-up discovery relating to those documents.  5/19/09 Tr. at 5-9.  Absent a preclusion order, the Court would be constrained to reopen discovery, thereby further prolonging this five-year-old case and imposing additional litigation costs on the government.  See Pal, 2008 WL 2627614, at *5; see also Haas, 282 Fed.App'x at 86 (noting that defendant was prejudiced by plaintiff's disclosure of a potential witness after the close of discovery and the filing of defendant's motion for summary judgment).

For all these reasons, the prejudice factor weighs in favor of imposing sanctions.

### 4. Possibility of a Continuance

A continuance is always theoretically possible, and perhaps could mitigate the prejudice

---

[14]  The above-referenced letter is the same letter that American Friends seeks to have precluded from evidence.  See infra p. 31-32.  Nevertheless, because American Friends relies on that letter in its response to this Court's May 5th Order to Show Cause, see 5/8/09 Fishman Aff. ¶ 8 & Ex. A, this Court considers it in connection with the government's motion for sanctions.

to the government if its preclusion motion were denied.  Nevertheless, American Friends "cannot rely on this possibility when there is no indication in the record that [it] requested a continuance at the time."  Balsalmico, 440 F.3d at 118 (citing Wolak v. Spucci, 217 F.3d 157, 161 (2d Cir. 2000)).   In fact, American Friends made no request to reopen discovery or to adjourn the briefing schedule or oral argument on the government's motion for judgment on the pleadings.  See Haas, 282 Fed.App'x at 87.

Also militating against a continuance is American Friends' failure to show that its efforts to obtain the documents at issue began at an appropriately early date.  See Pal, 2008 WL 2627614, at *6.  The record reflects that American Friends made only minimal efforts to obtain these documents during the first phase of discovery, and made absolutely no efforts to obtain them after the case was reopened.  Moreover, the government adhered to the discovery schedule throughout this litigation; extensions were granted solely because of American Friends' failure to timely respond to the government's discovery demands.  In light of the ample opportunity afforded American Friends to produce these documents, a continuance is neither deserved nor warranted.  Cf. Great White Bear, LLC v. Mervyns, LLC, No. 06-Civ.-13358 (RMB) (FM), 2008 WL 2220662, at *6 (S.D.N.Y. May 27, 2008) ("[Plaintiff] does not deserve . . . a further continuance since it already has had several opportunities to address the deficiencies of [its expert report], but has failed to respond adequately.  To allow additional time now would be unfair not only to [defendant], but to the Court.").

This case has languished long enough.  The Court declines to grant a continuance, particularly where American Friends has not requested one.  The continuance factor thus weighs heavily in favor of imposing sanctions.

### 5. Balancing the Factors

Having found that American Friends' failure to disclose the general ledger and tuition checks was not substantially justified or harmless, and having weighed the relevant factors, this Court is satisfied that there is more than a sufficient basis to preclude those documents under Rule 37(c). Accordingly, the government's motion for sanctions is granted, to the extent described below. See *infra* pp. 28, 34.

### B. Sanctions for Failure to Comply With Discovery Orders

Rule 37(b), which provides a broad array of sanctions for a party's failure to obey a discovery order, see Fed. R. Civ. P. 37(b)(2), constitutes an independent basis for sanctioning American Friends in this case. "The imposition of sanctions under Rule 37 is within the discretion of the district court and a decision to [impose sanctions] for failure to comply with discovery orders will only be reversed if the decision constitutes an abuse of that discretion." John B. Hull, Inc. v. Waterbury Petroleum Prods., Inc., 845 F.2d 1172, 1176 (2d Cir. 1988) (citing Nat'l Hockey League v. Metro. Hockey Club, Inc., 427 U.S. 639, 643 (1976) (per curiam); Argo Marine Sys., Inc. v. Camar Corp., 755 F.2d 1006, 1015 (2d Cir. 1985)).

Similar to the analysis under Rule 37(c), courts in the Second Circuit consider a number of factors in determining whether to impose sanctions under Rule 37(b) and, if so, what sanctions to impose; these factors include "(1) the willfulness of the non-compliant party or the reason for the noncompliance; (2) the efficacy of lesser sanctions; (3) the duration of the non-compliance; and (4) whether the non-compliant party has been warned of the consequences of non-compliance." 3801 Beach Channel, Inc. v. Shvartzman, No. 05-CV-207 (CBA) (JO), 2007 WL 2891119, at *4 (E.D.N.Y. Sept. 28, 2007) (citing Bambu Sales, Inc. v. Ozark

Trading, Inc., 58 F.3d 849, 853 (2d Cir. 1995)).  "No particular factor is dispositive, and 'sanctions must be weighed in light of the full record of the case.'" Id. (quoting Cine-Forty Second St. Theatre Corp. v. Allied Artists Pictures Corp., 602 F.2d 1062, 1068 (2d Cir. 1979)).  These factors likewise support a preclusion sanction in this case.

### 1. Willfulness

"Non-compliance may be deemed willful when the court's orders have been clear, when the party has understood them and when the party's noncompliance is not due to factors beyond the party's control."  Id. at *5 (internal quotation marks and citations omitted).

Through Fishman, American Friends repeatedly represented to the Court that documents pertaining to the tax years at issue had been lost or destroyed, and that all remaining documents responsive to the government's requests had been produced.  Despite this representation, a thorough search for responsive documents was never undertaken during either phase of discovery.  Indeed, by Fishman's own admissions, the only steps taken to obtain financial records from Strauss were a few oral requests by Fishman, during the first phase of discovery, that Strauss search his files for responsive documents.  Fishman never asked Strauss to conduct a search of electronic files.  After American Friends commenced this litigation in 2004, Fishman never instituted a records retention policy to prevent destruction of documents. When asked to provide the basis for his conclusion that Strauss had produced all documents in his control, the best Fishman could say was, "He told me."  5/19/09 Tr. at 12.  The record thus reveals that Strauss' "supposed search was incomplete and haphazard and that no lawyer ever made inquiry of him about what he did."  Metro. Opera, 212 F.R.D. at 187 (imposing sanctions).

-26-

More critically, until a few days before American Friends' opposition papers were due, Fishman did not even contact Strauss after the reopening of this case. And as to Kogan, Fishman made no personal efforts whatsoever to obtain discovery from her during either phase of this litigation.

Metropolitan Opera is instructive here. In that case, the court found various instances of willful non-compliance with discovery obligations, including defense counsel's (1) "repeated[] represent[ations] to the Court that all documents responsive to the [plaintiff's] document requests had been produced when, in fact, a thorough search had never been made and counsel had *no* basis for so representing;" (2) failure to implement a document retention policy after the commencement of litigation; (3) failure to adequately explain to the non-lawyer in charge of production that discoverable documents included those in electronic form; and (4) failure to speak to and/or follow up with individuals who might have relevant documents. See Metro. Opera, 212 F.R.D. at 181-82 (emphasis in original). As is apparent from the foregoing, Fishman has committed similar derelictions during this litigation, all of which are attributable to American Friends. Cf. Nemaizer v. Baker, 793 F.2d 58, 62-63 (2d Cir. 1986) ("[A]n attorney's actions, whether arising from neglect, carelessness or inexperience, are attributable to the client, who has a duty to protect his own interests by taking such legal steps as are necessary.") (citing Ackerman v. United States, 340 U.S. 193, 197-98 (1950)). American Friends' discovery obligations have been clear throughout discovery in this case, and its failure to comply was not due to factors beyond its control.

### 2. Efficacy of Lesser Sanctions

Of the sanctions available under Rule 37(b)(2), an order precluding the general ledger

and tuition checks from American Friends' opposition papers is among the least severe available. Indeed, a recommendation that this case be dismissed, or that certain facts be deemed admitted, might well be sustainable, given American Friends' failure to comply with court orders, as well as its repeated representations that it had produced all documents responsive to the government's discovery demands when, in fact, it had undertaken virtually no search of its files after discovery was reopened in this case. See Metro. Opera, 212 F.R.D at 181-82 (entering judgment in favor of plaintiff as a discovery sanction due, in part, to the above-described conduct of defense counsel). Likewise, an order striking American Friends' opposition papers in their entirety, as the government urges, see 5/1/09 Gov't Letter, at 1, might also be sustainable given American Friends' long history of non-compliance.

Because the government's discovery rights have been improperly frustrated throughout the course of this litigation, and American Friends has wilfully failed to comply with its discovery obligations – even when ordered to do so by this Court – preclusion of the general ledger and tuition checks from evidence is an appropriate and indeed relatively modest sanction in this case. This sanction, which is decidedly less severe that an order striking American Friends' opposition papers in their entirety, suffices to remedy the prejudice to the government caused by the sudden surfacing of those documents. Therefore, the Court declines to impose the harsher sanctions.

### 3. Duration of Non-Compliance

American Friends' non-compliance with this Court's discovery orders has lasted throughout the entire litigation, including both phases of discovery. During the first phase, (1) the government served document demands on American Friends calling for the documents

at issue here; (2) American Friends took nearly four months to respond to those demands, was non-responsive to the government's inquiries as to the status of its responses during much of that four-month period and, when it finally did respond, produced a two-page letter indicating that all responsive documents had already been produced; and (3) the government was constrained to seek an extension of the discovery deadline due to American Friends' tardy responses. This Court granted the government's request, and ordered American Friends to serve amended responses to the government's discovery demands.

After discovery was reopened in June 2008, American Friends displayed similar disregard for its discovery obligations. The government served a second set of documents demands, this time specifically requesting documents relating to tuition payments, including copies of cancelled checks. When nearly four months passed with no response to its discovery demands, the government was forced to seek judicial intervention, which in turn generated a meager production of four documents. American Friends maintained at that time, and during a settlement conference held in December 2008, that no other responsive documents existed. As it turns out, of course, American Friends had made little, if any, efforts to locate them. In fact, the documents produced by American Friends in response to this Court's order all predate 2004, and should have been produced during the *first* phase of discovery.

Simply put, American Friends failed to comply with its discovery obligations throughout the entire course of this litigation. The duration of American Friends' non-compliance is a factor that cuts heavily against the entity, and would support sanctions much more severe than preclusion of the general ledger and tuition checks. See 3801 Beach Channel, 2007 WL 2891119, at *6 (finding that seven months of non-compliance weighed in

favor of striking defendants' answer as a sanction).

### 4. Warning of Consequences of Non-Compliance

"Parties and counsel have no absolute right 'to be warned that they disobey court orders at their peril.'" Reilly v. Natwest Mkts. Group, Inc., 181 F.3d 253, 270 (2d Cir. 1999) (quoting Daval Steel Prods. v. M/V Fakredine, 951 F.2d 1357, 1366 (2d Cir. 1991)); see also 3801 Beach Channel, 2007 WL 2891119, at *7 ("formal warnings" are not "an absolute precedent" to the imposition of sanctions) (internal quotation marks and citation omitted). Here, American Friends ignored an explicit warning from the Court:  In response to the government's November 14, 2008 motion to compel, the Court ordered American Friends to respond to the government's discovery demands – which included demands for "invoices, receipts, copies of cancelled checks, cash receipt journals, [and] written documentation of donations[,]" see Government's Second Set of Requests for Production, at 3 – and expressly warned American Friends that its failure to do so could result in the imposition of sanctions. Nevertheless, for whatever reason, American Friends, acting through Fishman, made no effort to follow up with Strauss, a key player in this litigation and, as American Friends' accountant, an obvious source of financial documents such as those sought by the government.

Throughout both phases of discovery in this case, American Friends has been non-responsive to the government's discovery requests, has flouted its discovery obligations, and has required constant prompting from this Court.  The government was extraordinarily accommodating in consenting to American Friends' repeated requests for additional time, only to have it produce nothing (in the first phase of discovery) or very little (in the second phase of discovery).  Under these circumstances, even had this Court not warned American Friends that

discovery sanctions would be imposed for failure to comply with its discovery obligations, sanctions would be appropriate here.

Accordingly, and for all of the foregoing reasons, this Court concludes that Rule 37(b)(2) provides a separate and independent basis for precluding American Friends from relying on and/or introducing the general ledger and tuition checks into evidence.

## III. American Friends' Motion for Sanctions

Citing the government's alleged failure to supplement its initial disclosures as required by Rule 26(e)(1)(A), American Friends has cross-moved for sanctions, seeking preclusion of Exhibit 5 to the government's motion for judgment on the pleadings. In addition, American Friends requests an order prohibiting the government from offering evidence that, during the December 2006 audit, American Friends produced no documentation to support its argument that its informational returns for the tax years ending June 30, 2000, June 30, 2001, and June 30, 2002, improperly included as income tuition payments to YOY. As demonstrated below, both the timing and substance of the cross-motion strongly suggest that it was interposed solely for tactical reasons.

### A. Exhibit 5

Exhibit 5 to the government's motion for judgment on the pleadings is a copy of an IRS letter dated January 10, 2008 ("IRS letter"), notifying American Friends that following the December 2006 audit, the IRS had deemed American Friends' amended informational returns unacceptable. As the government correctly notes, Rule 26(a) requires disclosure of only those documents a party may rely upon in support of its claims or defenses. See Fed. R. Civ. P.

26(a)(1)(A)(ii).  The government has disclaimed any intention to rely on the IRS letter, and

represents that it attached the letter as an exhibit to its dispositive motion only for the purpose

of "describ[ing] the chronology of events that occurred between the conditional dismissal of

th[is case] and its reinstatement."  Gov't Response Mem., D.E. # 49, at 3.  This Court agrees

with the government that the IRS letter does not fall within the purview of disclosures required

by Rule 26(a).

Moreover, even if the IRS letter fell within the parameters of Rule 26(a), the

government would not have been required to produce it to American Friends, because

American Friends clearly knew of the letter's existence.  <u>See</u> Fed. R. Civ. P. 26(e)(1)(A)

(requiring supplementation only where "the additional or corrective information has not

otherwise been made known to the other parties during the discovery process or in

writing[.]").  Indeed, Fishman concedes, as he must, that he received the letter, which was

addressed to him.  <u>See</u> 5/19/09 Tr. at 40.  Simply put, it strains credulity for American

Friends to argue that it has somehow been harmed by the government's failure to produce a

letter that the IRS sent to its counsel, well over a year ago.  <u>Cf.</u> Fed. R. Civ. P. 37(c)(1)

(directing courts to refrain from precluding evidence where the failure to provide the evidence

was harmless).  Accordingly, the Court denies American Friends' motion for an order

precluding the IRS letter and/or striking it from the government's motion for judgment on the

pleadings.

### B. Preclusion of Other Evidence

American Friends additionally seeks an order precluding the government from offering

evidence demonstrating that during the December 2006 audit, American Friends failed to

support its argument that it improperly included tuition payments to YOY as income on its informational returns for the tax years ending June 30, 2000, June 30, 2001, and June 30, 2002. American Friends contends that documents supporting its theory were provided to the IRS in connection with the audit and, for that reason, the government should have supplemented its initial disclosures upon receipt of those documents.

American Friends does not specifically identify any documents it would have the Court preclude from evidence. This omission is understandable, given the absence of proof that American Friends in fact submitted any documents to the IRS in December 2006. <u>See</u> *supra* Part II.A.3. In any event, to the extent that American Friends' argument relies on Rule 26(a), that reliance is misplaced, since the government does not cite any such audit submissions in support of its defenses. Nor did the government fail to properly respond to any discovery demands; American Friends never served the government with *any* requests for production following the reopening of this case. The government has assured the Court that, had American Friends done so, it would have responded in due course. <u>See</u> 5/19/09 Tr. at 45. Since American Friends had knowledge of the documents (if any) that were furnished to the IRS, it cannot seriously contend that it was harmed by the government's failure to produce them. <u>See</u> Fed. R. Civ. P. 37(c)(1).

For all of these reasons, the Court declines to sanction the government for failing to produce documents supposedly furnished to the IRS by American Friends where those documents (if any) (1) will not be relied on by the government; (2) were never requested by American Friends; and (3) were already within the custody or control of American Friends. To rule otherwise would violate the Court's obligation to construe and administer the Federal

Rules to secure a just determination.  <u>See</u> Fed. R. Civ. P. 1.

## CONCLUSION

For all of the foregoing reasons, the government's motion for sanctions is granted to the following extent:  American Friends is precluded from offering, in opposition to the government's dispositive motion or at trial, the general ledger and tuition checks not produced during discovery.  Therefore, Exhibits P and Q, and any reference thereto, are stricken from American Friends' papers in opposition to the government's motion for judgment on the pleadings.

American Friends' cross-motion for sanctions is denied.

**SO ORDERED.**

**Dated:**      **Brooklyn, New York**
              **June 9, 2009**

                              **ROANNE L. MANN**
                              **UNITED STATES MAGISTRATE JUDGE**